F I L E D
Clerk
District Court

JAN 14 2026

for the Northern Mariana Islands
By_____
(Deputy Clerk)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS**

UNITED STATES OF AMERICA,

      Plaintiff,

      v.

CHANG RU MENG BACKMAN,

      Defendant.

Case No. 1:12-cr-00015

**DECISION AND ORDER DENYING
DEFENDANT'S SECOND MOTION FOR
COMPASSIONATE RELEASE**

Before the Court is Defendant Chang Ru Meng Backman's Motion for Compassionate Release (ECF No. 272), filed on October 31, 2025. Therein, Backman, through private counsel, moves for compassionate release based on extraordinary and compelling reasons pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The Government timely filed its Opposition (ECF No. 275) on November 13, 2025. Backman did not file a reply; however, on December 10, 2025, she filed two supplemental exhibits (ECF Nos. 277, 277-1, 277-2) in support of her Motion.

On December 11, 2025, the Court held a hearing on Backman's Motion. Counsel for Backman and the Government appeared in-person, while Backman appeared telephonically from Federal Correctional Institute (FCI), Waseca, located at Waseca, Minnesota. The Court heard arguments from all Parties and received additional sworn testimony from Backman before taking her Motion under advisement. (Mins., ECF No. 278.)

Having considered the briefs, the record in this case, and the applicable law, the Court DENIES Backman's Motion for Compassionate Release.

1

## I.      LEGAL STANDARD

2      Section 3582 of title 18 of the United States Code provides in relevant part:

3          **(c) Modification of an imposed term of imprisonment.**—The
          court may not modify a term of imprisonment once it has been
4          imposed except that—

5              **(1)** in any case—

6                  **(A)** the court, . . . upon motion of the defendant after the
                  defendant has fully exhausted all administrative rights to
7                  appeal a failure of the Bureau of Prisons to bring a motion
                  on the defendant's behalf or the lapse of 30 days from the
8                  receipt of such a request by the warden of the defendant's
                  facility, whichever is earlier, may reduce the term of
9                  imprisonment (and may impose a term of probation or
                  supervised release with or without conditions that does not
10                  exceed the unserved portion of the original term of
                  imprisonment), after considering the factors set forth in [18
11                  U.S.C. § 3553(a)] to the extent that they are applicable, if it
                  finds that—

12                      **(i)** extraordinary and compelling reasons warrant such a
13                      reduction; . . .

14                  and that such a reduction is consistent with the applicable
                  policy statements issued by the Sentencing
15                  Commission[.]

16      18 U.S.C. § 3582(c). As such, for Backman to be entitled to relief, she must show that (1) she has

17      previously requested the Bureau of Prisons (BOP) to file a motion for compassionate release on

18      her behalf, to no avail; (2) "extraordinary and compelling reasons" exist "warrant[ing] . . . a

19      reduction"; (3) her requested reduction "is consistent with the applicable policy statements issued

20      by the Sentencing Commission"; and (4) the factors set forth under 18 U.S.C. § 3553(a) weigh in

21      favor of her requested reduction under the particular circumstances of the case. *Id.*

22      § 3582(c)(1)(A)(i); *see also United States v. Wright*, 46 F.4th 938, 945 (9th Cir. 2022) ("Although

23      a district court must conclude that a defendant satisfies all . . . predicates before granting a motion

24

2

for compassionate release, it may deny compassionate release if a defendant fails to satisfy any of these grounds.").

## II.    ANALYSIS

### A.  The Parties' Arguments & Backman's Hearing Testimony

On June 7, 2013, Backman was found guilty by a jury of a single count of sex trafficking in violation of 18 U.S.C. § 1591(a)(1), and was sentenced by this Court to 235 months of imprisonment.  Backman requests the Court to reduce her original 235-month sentence such that she may be immediately released.[1]  (*See generally* Mot. for Compassionate Release, ECF No. 272.) As to each element of the required showing for relief under 18 U.S.C. § 3582(c)(1)(A)(i), first, Backman represents that she has exhausted her administrative remedies with the Bureau of Prisons, having applied for compassionate release with the wardens of FCI Dublin and FCI Waseca but never receiving any response.  (*Id.* ¶ 5; *id.*, Exs. E, F (BOP internal emails from Backman dated January 27, 2024, March 14, 2024, and February 5, 2025, requesting compassionate release), ECF No. 272-1; Decl. of Chang Ru Meng Backman ¶¶ 10-11 [hereinafter "Backman Decl."], ECF No 273.)

---

[1] Backman asserts that she has "served more than three-quarters of her sentence," a calculation apparently derived from the December 29, 2029 release date listed on the Bureau of Prisons Inmate Locator website. (Mot. for Compassionate Release ¶ 3.)  Such an assertion disregards the actual length of the sentence imposed on Backman and corresponding release date, especially as any credit Backman may earn in Bureau of Prisons custody does not change the Court's sentence and may be lost at any time before Backman is eligible for immediate release after application of any credit.  *See Barber v. Thomas*, 560 U.S. 474, 482 (2010) ("Thereafter, the sentence the judge imposed would be the sentence the offender actually served, with a sole statutory exception for good time credits."  (emphasis removed)); *United States v. Wilson*, 503 U.S. 329, 335-36 (1992) (distinguishing role of Bureau of Prisons in determining "as an administrative matter" the end of a prisoner's sentence, as modified by the Bureau's computation of credits, from district court's role in imposing sentence); *e.g.*, 28 C.F.R. § 523.43(a) (providing that First Step Act credits may be lost for violation of requirements or rules of prison programming).  From February 10, 2014, the date the Court imposed sentence, to October 31, 2025, the date Backman filed her Motion, 140 months and 21 days have elapsed.  With 294 days of credit for time served (*see* 2d Am. J., ECF No. 245), Backman has served approximately 150.5 months (66 percent) of her 235-month sentence.

Second, as to extraordinary and compelling reasons, Backman describes two instances during the COVID-19 pandemic lockdown at FCI Dublin—where she was incarcerated from 2019 to April 2024, prior to her transfer to FCI Waseca—where a male BOP officer asked or demanded that she expose her breasts as a condition for obtaining hot water and her resulting anger, shame, embarrassment, and avoidance of the officer during the rest of her time at FCI Dublin.  (Mot. for Compassionate Release ¶ 6(a); *id.*, Ex. A (BOP internal email from Backman dated January 29, 2024); Backman Decl. ¶ 4.)  Backman also describes the traumatic "last minute closure" of FCI Dublin and transfer to FCI Waseca (Backman Decl. ¶ 6 (describing loss of "significant amounts" of personal property, substandard transport vehicle with inoperable restroom, and lack of food and water)) along with her "declining health and medical neglect" she experienced at FCI Dublin and continues to experience at FCI Waseca (*id.* ¶¶ 7-8 (describing severe pain in both knees; eye, heart, and breathing conditions; delays in obtaining medical and psychological appointments and generally inadequate medical and psychological treatment; and speculation of mold and asbestos in housing units)).  Backman directs the Court's attention to an ongoing class-action litigation concerning the pervasive conditions of sexual abuse, neglect, and overall dysfunction at FCI Dublin, her membership in the plaintiff class, and cases in which former FCI Dublin inmates have been granted compassionate release.  (Mot. for Compassionate Release ¶ 6(b) (citing *United States v. Lambert*, No. CR 19-08-GF-BMM, 2025 WL 2720570 (D. Mont. Sept. 24, 2025), and *United States v. Russell*, 757 F. Supp. 3d 1132 (D. Idaho 2024)); *id.*, Ex. B (notice of class action in *California Coalition for Women Prisoners v. United States*, U.S. District Court for the District of Northern California case number 4:23-CV-4155-YGR; April 15, 2024 order requiring BOP to update information for all inmates forthwith in view of BOP's announced intended closure of FCI Dublin; February 18, 2025 letter from California Coalition for Women Prisoners in support of

1   Backman's Motion; and May 28, 2024 letter from the Hon. Yvonne Gonzalez Rogers describing

2   criminal and civil proceedings related to FCI Dublin); Backman Decl. ¶ 12 (describing four-year

3   reduction in sentence for veteran formerly incarcerated at FCI Dublin); *id.*, Ex. G (November 20,

4   2024 Department of Army memorandum reducing ninety-nine-year sentence to ninety-five years

5   "based on the substandard and problematic conditions at [veteran's] previous place of

6   confinement").)

7          Third and fourth, Backman contends that compassionate release is consistent with the

8   Sentencing Commission's policy statement set forth at Sentencing Guideline 1B1.13 and that the

9   18 U.S.C. § 3553(a) factors favor her requested relief.  (Mot. for Compassionate Release ¶ 7.)

10  Backman specifically identifies her age and declining health, her experiences as a "vulnerable

11  victim" at FCI Dublin, her rehabilitation, low risk of recidivism, and lack of any risk of danger to

12  the community, and her plans upon release that would better enable her to pay restitution as a

13  combination of circumstances justifying her request for release.  (*Id.* ¶¶ 6(e)-(g), 7; *see also id.*,

14  Exs. C, D, H, I.)

15         In opposition, the Government first asserts that Backman's representations about her plans

16  on release are contradictory, and that such contradictions reflect her duplicity generally.  (Gov't's

17  Opp'n 2, ECF No. 275.)  The Government next contends that Backman is ineligible for a sentence

18  reduction because the circumstances she describes are not "extraordinary and compelling."  The

19  Government notes that while Backman's allegations, "[i]f true, . . . would be a serious violation,

20  one worthy of administrative, civil, and possibly criminal penalties against the guard," Backman's

21  allegations fail to establish that she suffered from conduct akin to criminal sexual abuse or a sexual

22  act or that the BOP officer has since admitted to, been convicted for, or otherwise been the subject

23  of civil and administrative findings corroborating the conduct described in Backman's allegations.

24

1  (*Id.* at 2-3.)  The Government further highlights that Backman's reference to her status as a member

2  of the plaintiff class in the FCI Dublin litigation is bereft of any description of her role in the class-

3  action litigation "aside from being automatically enrolled as a member of the class."  (*Id.* at 3.)

4  The Government concludes by contending that Backman's "various ailments and circumstances

5  . . . do not individually or cumulatively rise to the level that would warrant a reduced sentence."

6  (*Id.* at 3-4 (asserting that Backman's "cumulative petition is nearly identical" to the petition for

7  compassionate release denied in *United States v. Castle*, No. 2:15-cr-00190-KJM-DB-2, 2024 WL

8  3429668 (E.D. Cal. July 16, 2024)).)

9       At the hearing on her Motion, Backman testified to the following.  (1) The abuse she

10  suffered was verbal and not physical, consisting of the two instances where the same BOP officer

11  demanded she expose herself to obtain hot water.  (2) She developed an emotional fear of the

12  officer in 2020 or 2021, during the COVID-19 pandemic lockdown at FCI Dublin, as she was

13  entirely reliant on BOP officers to obtain services during the lockdown and was acutely aware of

14  the power the officer held over her.  (3) After the incidents, she avoided seeing or talking to the

15  officer entirely.  (4) She did not fear any other BOP officers or staff, as they did not abuse her or

16  otherwise have issues in their treatment of inmates.  (5) She emailed the warden of FCI Dublin in

17  2024 to complain about the officer who abused her, but did not receive any response.  (6) She was

18  unaware of the criminal case against the officer who abused her until after the charges were filed.

19  (7) She was not involved in the class action.  (8) The only interview concerning her complaint of

20  abuse occurred two weeks after her email to the warden of FCI Dublin, when a psychiatrist saw

21  her, told her to not be fearful, and informed her that she could always seek out further psychiatric

22  help.  (9) She did not subsequently speak to a psychiatrist at FCI Dublin, and FCI Dublin closed

23  approximately a month later in March 2024.  (10) After her transfer to FCI Waseca, she sought a

psychiatric appointment and was only able to see a psychiatrist some two months after she first arrived at FCI Waseca.  (11) She also sought out medical care but had to wait some time before being seen by a doctor.  (12) She suffered from anxiety and depression but was able to receive treatment.  (13) At the time of her sentencing, she did not truly understand the meaning of vulnerability; however, her experiences and abuse at FCI Dublin have allowed her understand vulnerability and sincerely appreciate her wrongdoing for her offense of conviction.

**B.  Discussion**

The Court finds that Backman has not demonstrated that she is entitled to a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i) because she has not met her burden to show that "extraordinary and compelling reasons warrant such a reduction[.]"[2]

**1.  Sentencing Guideline 1B1.13 defines the "extraordinary and compelling reasons" justifying a sentence reduction pursuant to 18 U.S.C. § 3582(c).**

As the Parties correctly note, Sentencing Guideline 1B1.13 governs the Court's decision on Backman's Motion.[3]  *United States v. Bryant*, 144 F.4th 1119, 1124 (9th Cir. 2025) ("If a defendant cannot show 'extraordinary and compelling reasons' as defined in § 1B1.13, then he is

---

[2] Insofar as the Court must make a threshold determination as to Backman's exhaustion of administrative remedies before addressing the substantive merits of her Motion, *cf. Wright*, 46 F.4th at 945 (treating exhaustion as separate and apart from "three predicates" for granting motion for compassionate release), the Court finds that Backman has exhausted her administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A), namely, that she petitioned the wardens of FCI Dublin and FCI Waseca to file a motion on her behalf, the wardens did not do so, and more than thirty days has run since she petitioned the BOP. (*See* Mot. for Compassionate Release, Exs. E, F; Backman Decl. ¶¶ 10-11.)  In any event, the Government does not contend that Backman has failed to comply with the administrative exhaustion requirement.  *See United States v. Keller*, 2 F.4th 1278, 1282 (9th Cir. 2021) (construing 18 U.S.C. § 3582(c)(1)(A)'s administrative exhaustion requirement as a mandatory claims-processing rule "that must be enforced *when properly invoked*" (emphasis added)).

[3] Substantial amendments to the Sentencing Guidelines came into effect on November 1, 2025—the day after Backman filed her Motion.  U.S. Sent'g Comm'n, Sentencing Guidelines for United States Courts, 90 Fed. Reg. 19,798 (May 9, 2025) (notice of submission of amendments to Congress and designating November 1, 2025 as effective date of amendments).  Sentencing Guideline 1B1.13, however, was not among the provisions modified by the November 1, 2025 amendments.  *See* U.S.S.G. § 1B1.13 historical note (last amendment dated November 1, 2023).

ineligible for compassionate release.").  In relevant part, Sentencing Guideline 1B1.13 sets forth a

list of "extraordinary and compelling reasons":

> (b) EXTRAORDINARY AND COMPELLING REASONS.—Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
>
> (1) MEDICAL CIRCUMSTANCES OF THE DEFENDANT.—
>
> [. . .]
>
> (B) The defendant is—
>
> > (i) suffering from a serious physical or medical condition,
> >
> > (ii) suffering from a serious functional or cognitive impairment, or
> >
> > (iii) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of a serious deterioration in health or death.
>
> [. . .]
>
> (3) FAMILY CIRCUMSTANCES OF THE DEFENDANT.—
>
> (A) The death or incapacitation of the caregiver of the defendant's minor child . . . .
>
> (B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.
>
> [. . .]

(4) VICTIM OF ABUSE.—The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of:

(A) sexual abuse involving a "sexual act," as defined in 18 U.S.C. § 2246(2) (including the conduct described in 18 U.S.C. § 2246(2)(D) regardless of the age of the victim); or

(B) physical abuse resulting in "serious bodily injury," as defined in the Commentary to § 1B1.1 (Application Instructions);

that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant.

For the purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger.

(5) OTHER REASONS.—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

[. . .]

(d) REHABILITATION OF THE DEFENDANT.—Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for the purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

U.S.S.G. § 1B1.13(b), (d).

## 2. Backman is not entitled to relief as to any of the specifically enumerated "reasons" considered individually.

In her Motion and at the hearing on the same, Backman concedes that her circumstances fail to show that she is entitled to relief under any of the enumerated "reasons" in Sentencing Guideline 1B1.13(b). (Mot. for Compassionate Release 4 n.2 ("Paragraphs 1 through 4 deal with,

9

1    *inter alia*[,] age, ill health and sexual abuse, at drastic levels which, taken singly, are not present

2    here.").)  The Court finds that Backman's circumstances indeed do not meet the requirements for

3    relief under any of the specifically enumerated "reasons" in Sentencing Guideline 1B1.13(b), taken

4    individually.

5           First, as to Backman's medical circumstances, *see* U.S.S.G. § 1B1.13(b)(1), the record does

6    not show that Backman's "ability . . . to provide self-care within the environment of a correctional

7    facility" has been "substantially diminishe[d]," *id.* § 1B1.13(b)(1)(B), or that she is not receiving

8    "long-term or specialized medical care . . . without which [she] is at risk of serious deterioration

9    in health or death," *id.* § 1B1.13(b)(1)(C).  Instead, the record shows that Backman remains able

10   to seek out—and indeed has sought out and received—medical and psychological treatment,

11   prescriptions to cope with her ailments, and the necessary amenities of daily living within the

12   prison environment.  (*See, e.g.*, Backman Decl. ¶¶ 7-8.)  Furthermore, the record indicates that

13   BOP has assessed her mental health as being of low concern, classified her physical health as

14   requiring minimal chronic care, and determined that she is able to work regular job assignments

15   without any medical restrictions.  (Mot. for Compassionate Release, Ex. C, at 3 (Individualized

16   Needs Plan dated November 13, 2024).)  As such, even accounting for Backman's assertions of

17   delayed care and inadequate treatment, her medical circumstances at present fall short of

18   establishing her entitlement to compassionate release.  *See, e.g.*, *United States v. Rodriguez*, 424

19   F. Supp. 3d 674, 682 (N.D. Cal. 2019) (collecting cases on the showing of "the severity of

20   deterioration" in medical circumstances "required for compassionate release).

21          Second, as to Backman's family circumstances, *see* U.S.S.G. § 1B1.13(b)(3), the record

22   lacks sufficient evidence to establish the incapacity of Backman's husband—either as the sole

23   caregiver for her underage son, *id.* § 1B1.13(b)(3)(A), or as the spouse to whom she would be the

24

1  sole remaining caregiver, *id.* § 1B1.13(b)(3)(B). *See, e.g.*, *United States v. Moore*, No. 21-CR-

2  02565-GPC-1, 2025 WL 2345226, at *4-5 (S.D. Cal. Aug. 13, 2025) (collecting cases requiring

3  that "[i]ncapacitation must be adequately proven"). Nor does Backman meet her burden to show

4  that she is the "only available caregiver" for her elderly, incapacitated parents. U.S.S.G.

5  § 1B1.13(b)(3)(C).[4] As noted at sentencing, Backman is the second of three children, with her two

6  brothers working and residing in Tianjin, China, the same city in which she was born and where

7  her parents appear to still reside. (Am. Presentence Investigation Report ¶ 70, ECF No. 192.)

8  Backman does not offer any sufficient explanation for why any and all of her siblings would be

9  unable to care for her parents.[5] *See, e.g.*, *Moore*, 2025 WL 2345226, at *5 ("If there are family

10 members or others that could be potential caregivers, the defendant must acknowledge why they

11 are inadequate."); *United States v. Rice*, No. 12-cr-00818-PJH-1, 2023 WL 6048777, at *3-4 (N.D.

12

13 [4] The Government's arguments concerning the apparent contradictions in Backman's plans should she be
14 released are well taken. Backman variously asserts that upon release, (1) she wishes to return to Saipan to
   take care of her underage son (Mot. for Compassionate Release, Ex. E, at 1); (2) she wishes to return to
   China to take care of her elderly, incapacitated parents (*id.* at 2); and (3) she will work as an "office
15 custodian" in a New York City firm (Mot. for Compassionate Release, Ex. H (letters dated December 2024
   concerning job offer at NY FIRETECH INC)). Without further explanation, it is unclear how Backman
16 would be able to accomplish all three.

17     A fair reading, however, of Backman's Motion, Declaration, and more recent supporting exhibits
   suggests that Backman is designating employment in New York City as her intended plan upon release,
18 possibly in addition to relocating her son and husband to New York City. (*See* Mot. for Compassionate
   Release ¶ 6(f); Backman Decl. ¶ 13; *id.* Ex. B, at 4 (California Coalition for Women Prisoners letter dated
   February 18, 2025) (indicating that Backman's son and husband plan to join Backman in New York City);
19 Suppl. Ex. 1, at 2 (California Coalition for Women Prisoners letter dated November 20, 2025) (explaining
   that Backman intends to care for her son and husband and work in New York City), ECF No. 277-1.) The
20 Court does not see how Backman would be able to relocate to New York City upon release in view of the
   pending immigration matter against her arising from her conviction in this criminal matter. (*See also* Mot.
21 for Compassionate Release, Ex. C, at 4 (noting that Backman has "[u]nresolved pending charges with
   ICE").)

22 [5] The Court previously rejected Backman's arguments seeking compassionate release based on the need to
   care for her elderly parents because Backman failed to show that, *inter alia*, she would be the sole caretaker
23 for her parents. (Order Den. Mot. for Compassionate Release 6-7 (noting Backman's acknowledgement
   that her brothers do care for her parents in some capacity in addition to the brothers' employment
24 commitments), ECF No. 258.)

Cal. Sept. 14, 2023) (rejecting argument for unavailability of adult sons to care for elderly mother based on sons' "work[ing] full time" and "hav[ing] families and households of their own"). Therefore, Backman is not eligible for compassionate release based on her family circumstances.

Third, as to Backman's experiences at FCI Dublin as a victim of abuse, *see* U.S.S.G. § 1B1.13(b)(4), the Court is constrained to agree with the Government that Backman does not fall within the scope of Sentencing Guideline 1B1.13(b)(4). As the Government correctly asserts, to be eligible for compassionate release, Backman must have either suffered "sexual abuse involving a 'sexual act,'" U.S.S.G. § 1B1.13(b)(4)(A) (citing definition of "sexual act" as set forth in 18 U.S.C. § 2246), or "physical abuse resulting in 'serious bodily injury,'" *id.* § 1B1.13(b)(4)(B) (citing definition of "serious bodily injury" as set forth in U.S.S.G § 1B1.1 commentary). Backman has not put forward evidence showing that she suffered any physical contact, to include intentional touching or penetration of her genitalia, in the incidents involving the male BOP officer. *See* 18 U.S.C. § 2246(2). Nor has Backman put forward evidence showing that she suffered "extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty" or otherwise "require[ed] medical intervention such as surgery, hospitalization, or physical rehabilitation" as a consequence of the male BOP officer's conduct. U.S.S.G. § 1B1.1 comment. (n.1(L)). In addition, Backman's membership in the class action litigation concerning FCI Dublin and sworn testimony about the male BOP officer's abusive conduct, without more, does not meet her burden to establish the BOP officer's misconduct through "a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding." *Id.* § 1B1.13(b)(4). As such, Backman is not eligible for compassionate release pursuant to Sentencing Guideline 1B1.13(b)(4).

Therefore, as Backman concedes, she is ineligible for compassionate release under any of the relevant specifically enumerated "reasons" in Sentencing Guideline 1B1.13. The Court now turns to her request for relief based on the catch-all subsection of Sentencing Guideline 1B1.13(b)(5): a "combination of circumstances" rising to the level of an extraordinary and compelling reason justifying compassionate release. *See, e.g.*, *United States v. Russell*, 757 F. Supp. 3d 1132, 1138, (D. Idaho 2024) ("In any event, the catch-all clause at U.S.S.G. § 1B1.13(b)(5) affords the Court significant leeway in defining precisely what qualifies as an extraordinary and compelling reason sufficient to justify release."); *see also* U.S.S.G. § 1B1.13(b) (providing that extraordinary and compelling reasons "may exist under . . . a combination" of the circumstances enumerated thereunder).

### 3. Backman fails to show that the totality of her circumstances entitles her to relief.

For Backman to be eligible for relief under Sentencing Guideline 1B1.13(b)(5), she must show that "any other circumstance or combination of circumstances . . . are similar in gravity" to the specifically enumerated "reasons" set forth in the other subsections of Sentencing Guideline 1B1.13(b). U.S.S.G. § 1B1.13(b)(5). The Ninth Circuit has explained that Sentencing Guideline 1B1.13(b)(5) is "narrow," limited to "considerations not already subsumed in the [18 U.S.C. § 3553(a)] analysis" and construed in a manner that avoids "contorting the extraordinary-and-compelling-reasons requirement to convert compassionate release into an 'unbounded resentencing' mechanism." *Bryant*, 144 F.4th at 1127 (quoting *United States v. Hunter*, 12 F.4th 555, 570 (6th Cir. 2021)).

Here, Backman's cited circumstances as a whole do not rise to the level of being "similar in gravity" to the other "reasons" enumerated under Sentencing Guideline 1B1.13(b). Backman's experiences at FCI Dublin, including the abusive demands for her to expose herself to obtain basic amenities, apparent general dysfunction and unduly oppressive environment at the facility, and the

traumatic upheaval that was her transfer to FCI Waseca, are troubling to the Court—and the Court appreciates the gravity of the allegations and representations concerning the state of FCI Dublin in the lead-up to its closure and corresponding, compounding negative impact on Backman, *e.g.*, that Backman likely served "harder time" than had she been housed at a different facility. *But see Russell*, 757 F. Supp. 3d at 1141 (observing that "[t]here is no federal statute that permits shorter sentences for inmates serving 'harder' time in certain prisons" (quoting *United States v. Nevarez-Ledezma*, CR No. 19-1379 KG, 2021 WL 4430157, at *1 (D.N.M. Sept. 27, 2021))).

However, as presented in Backman's filings and testimony, her past experiences at FCI Dublin, along with her experiences since her transfer to FCI Waseca, do not approach the "gravity" as otherwise required to make out eligibility under the other subsections of Sentencing Guideline 1B1.13(b). Backman has not put forward evidence connecting the more grievous allegations of abusive misconduct on the part of BOP personnel at FCI Dublin to her own circumstances. As discussed *supra*, Backman did not suffer physical abuse at the hands of the male BOP officer, was able to avoid the officer after the abusive incidents, did not fear any of the other BOP personnel at FCI Dublin, ultimately sought out and received—albeit delayed—medical and psychiatric care, and remains able to seek out further care and participate in the activities of daily living in the prison environment at FCI Waseca. And while Backman certainly should be commended for her educational, vocational, disciplinary, and rehabilitative record while incarcerated, the Court finds that such considerations, on their own or in conjunction with Backman's other cited circumstances, are not "similar in gravity" to the "reasons" set forth under Sentencing Guideline 1B1.13(b). U.S.S.G. § 1B1.13(d) ("[R]ehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for the purposes of this policy statement."); *see, e.g.*, *United States v. Garza*, No. 1:10-cr-00165 JLT, 2025 WL 3201493, at *8-9 (E.D. Cal. Nov. 17, 2025) (commending

defendant for "rehabilitative efforts" but finding that such efforts could not support relief due to the lack of a "qualifying extraordinary circumstance with which rehabilitation could be paired").

Furthermore, the Court is unpersuaded by Backman's assertion, unsupported by any authority, about offsetting her two-step "vulnerable victim" sentencing enhancement with her experience of "becom[ing] a 'vulnerable victim' herself, especially at Dublin." (Mot. for Compassionate Release ¶ 7.) The Court is similarly unconvinced by Backman's reliance on other cases in which former FCI Dublin inmates received sentence reductions. In *United States v. Lambert*, No. CR 19-08-GF-BMM, 2025 WL 2735856 (D. Mont. Sept. 24, 2025),[6] the court found that extraordinary and compelling reasons justifying a sentence reduction existed where the defendant (1) specifically alleged three instances in which she was the victim of sexual abuse at the hands of a male BOP officer, including intentional touching of her vagina and fondling of her breasts; (2) joined the FCI Dublin class-action litigation; (3) maintained a separate civil action against the offending BOP officer; and (4) was subpoenaed to testify at the criminal trial of the BOP officer. *Lambert*, 2025 WL 2735856, at *5. In *United States v. Russell*, 757 F. Supp. 3d 1132 (D. Idaho 2024), the court granted a motion for compassionate release in view of (1) the defendant's deteriorating medical condition, even after receiving treatment through BOP; (2) the defendant's suffering serious bodily injury at the hands of a BOP guard and year-long delay before such injury was assessed; (3) the significant delay in BOP's administrative proceedings to address the defendant's complaints; and (4) the defendant's "non-existent criminal history, exemplary behavior while incarcerated, and concrete plan for reentry into society." *Russell*, 757 F. Supp. 3d at 1138-42. Here, as discussed *supra*, Backman's circumstances are easily distinguishable from *Lambert* and *Russell*: (1) she did not suffer serious bodily harm through physical sexual abuse at

---

[6] Backman's citation of *Lambert* (2025 WL 2720570) is to an order granting in part a motion for compassionate release that was superseded by an amended order issued the same day (2025 WL 2735856).

the hands of the offending BOP officer; (2) apart from the class-action litigation, with which she appears to have minimal involvement, she has no other pending administrative, civil, or criminal complaints against the offending BOP officer specifically addressing her allegations of misconduct; and (3) she is not being deprived of medical or mental care such that she cannot care for herself within the prison environment.[7]

Therefore, the Court finds that the totality of Backman's circumstances also does not support her request for relief pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and Sentencing Guideline 1B1.13(b)(5).

## III.    CONCLUSION

For the reasons set forth above, the Court is constrained to conclude that Backman is not entitled to compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) because she fails to identify an extraordinary and compelling reason justifying relief. Accordingly, the Court need not address Backman's remaining arguments concerning other applicable Sentencing Commission policy statements or the 18 U.S.C. § 3553(a) factors, *Wright*, 46 F.4th at 945, and DENIES her Motion for Compassionate Release in its entirety. The Court reiterates that the denial of Backman's requested relief is not to downplay the severity of the heinous misconduct at FCI Dublin or to deny the weight of Backman's own experiences at FCI Dublin and FCI Waseca. Instead, the Court's decision here merely reflects that under the applicable law and facts presented to the Court, Backman has failed to demonstrate that she is eligible for relief pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

---

[7] Backman also refers to a November 20, 2024 decision by the Secretary of the Army to reduce a veteran's ninety-nine year sentence by four years, upon the unanimous recommendation of the Army Clemency and Parole Board, "based on the substandard and problematic conditions" at FCI Dublin. (Backman Decl. ¶ 12; *id.* Ex. G.) The Secretary's decision is of little weight in deciding Backman's Motion because the Secretary's decision does not address the requirements for relief within the framework of 18 U.S.C. § 3582(c) and Sentencing Guideline 1B1.13.

IT IS SO ORDERED this 14th day of January, 2026.

_____
RAMONA V. MANGLONA
Chief Judge